COURT OF APPEALS OF VIRGINIA

Present:  Judges Malveaux, Athey and Callins
Argued at Lexington, Virginia


ADAM CHRISTOPHER ARMSTRONG

                                            MEMORANDUM OPINION* BY
v.        Record No. 0347-22-3             JUDGE DOMINIQUE A. CALLINS
                                              MARCH 28, 2023
KRISTY MARIE ROADCAP


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

Wyatt B. Durrette, Jr. (Christine A. Williams; Durrette, Arkema,
Gerson & Gill, PC, on brief), for appellant.

No brief or argument for appellee.


Following trial, a jury found for Adam Christopher Armstrong in his suit against Kristy

Marie Roadcap for negligence and malicious prosecution.  The jury awarded Armstrong $24,750 in

damages for the negligence claim and no damages for the malicious prosecution claim.  On appeal,

Armstrong challenges the circuit court's denial of his motions for summary judgment, arguing that,

had the circuit court granted summary judgment, the jury would have awarded him a greater amount

of damages.  Armstrong also challenges the circuit court's denial of his motion to set aside the jury

verdict.  For the reasons below, we affirm the judgment of the circuit court.

BACKGROUND

Because Roadcap prevailed on the damages issue, we review the evidence in the light

most favorable to her.  *Gilliam v. Immel*, 293 Va. 18, 20 (2017) (reviewing the evidence in the

light most favorable to the party who prevailed on the issue of damages).

---

* This opinion is not designated for publication.  *See* Code § 17.1-413

In 2016, Armstrong and Roadcap were married but living separately. On April 10, 2016, Roadcap, who was pregnant with Armstrong's child, went to Armstrong's house to discuss the status of their marriage, "as well as co-parenting moving forward." Roadcap and Armstrong got into an argument, and Roadcap went to a neighbor's house and called the police. The neighbor described Roadcap's demeanor as "afraid and nervous." When the police arrived, Roadcap was "visibly upset." Roadcap alleged that Armstrong had prevented her from leaving, spit in her face, bear-hugged her in the driveway, and took her keys so that she could not leave in her car. The police arrested Armstrong, and he was charged with two felonies and two misdemeanors. Armstrong spent the night in jail and posted bond the following morning. The circuit court issued an emergency protective order against Armstrong. Following his release, Armstrong complied with several bond restrictions, including not possessing a firearm, not traveling for work without permission, and performing drug and alcohol screenings. Armstrong was placed on probation and regularly checked in with his probation officer. Walter Green, an attorney and Armstrong's friend, represented Armstrong during the criminal proceedings.

Roadcap subsequently recanted the allegations, and Armstrong and Roadcap jointly moved to dismiss the charges against Armstrong. In support of the motion, Roadcap signed two affidavits admitting that the claims she made against Armstrong were false. Roadcap explained that she "overreacted" and Armstrong "only attempted to calm me down [and] did not harm me or hold me against my will, in any way." Roadcap also wrote to the Commonwealth's Attorney for Rockingham County asking the Commonwealth to dismiss the charges, and gave Armstrong a handwritten letter apologizing for her actions. The circuit court denied the joint motion to dismiss because Roadcap lacked standing to make the request and there was no basis for the relief sought. In September 2016, the circuit court nolle prossed the criminal charges against Armstrong. In April 2017, the circuit court expunged the charges from Armstrong's record.

On April 10, 2018, Armstrong filed a complaint against Roadcap alleging malicious prosecution, assault, battery, false imprisonment, intentional infliction of emotional distress, trespass, conspiracy, and negligence. Armstrong asked for $5,000,000 in compensatory damages and $350,000 in exemplary and punitive damages against Roadcap. Roadcap filed a demurrer to Armstrong's complaint. The circuit court overruled Roadcap's demurrer as to the malicious prosecution and negligence counts, and Armstrong later nonsuited all remaining counts except those for malicious prosecution and negligence. The parties appeared before the circuit court for a jury trial on September 23 and 24, 2021, during which Roadcap represented herself *pro se*.

At trial, Armstrong presented evidence that he paid Green $50,075 for Green's legal services during Armstrong's criminal proceedings. Armstrong submitted into evidence a "receipt of payments" for Green's legal services showing that the payments included a wire payment of $25,575 to a car dealer for a vehicle that Armstrong bought for Green as partial payment for Green's legal services. The receipt listed the dates of the payments, but did not itemize the specific legal services provided by Green.

Armstrong also presented evidence that he owns ninety-nine percent of Maryland Consulting Group (MCG), a company that sells travel-club memberships and vacation tours. Ethan Hitchcock, an expert in valuation and forensic accounting, testified about the damages to Armstrong's business caused by Armstrong's arrest and calculated Armstrong's total lost profits as $609,084. In reaching this figure, Hitchcock interviewed Armstrong several times and considered information provided by Armstrong's company. Hitchcock also considered "various professional texts, reference texts, third-party data sources such as industry research, relevant court cases, and things like that." Hitchcock testified that MCG sold 15% fewer tours in March to December 2016 as compared to the year before, even though the data showed that the company's sale percentage started growing significantly near the end of 2015. Hitchcock concluded that "[t]here wasn't any

factor that we could identify other than the alleged malicious prosecution that would have [led] to this decrease in tours." Hitchcock also included the prejudgment interest and calculated a total MCG damages amount of $796,688 based on 6% interest from April 2016 through the date of trial on September 23, 2021.

On cross-examination by Roadcap, Hitchcock conceded that other factors, such as Armstrong's marital separation from Roadcap, his month-long vacation to the Bahamas, his concerns about Roadcap's pregnancy and the medical condition of their child, and the declining health of his father could have also possibly contributed to the reduction in MCG's profits. Hitchcock testified that "if all those things were happening during this April [2016] to September [2016] time period, and this is the only time any of those things happened, then that could certainly impact" the profits.

After Armstrong rested his initial case, Roadcap called witnesses in her defense. At the close of Roadcap's evidence, Armstrong moved for summary judgment on liability, arguing that all the evidence supported a finding that Roadcap's allegations on April 10, 2016, were false. The circuit court denied the motion. Armstrong renewed his motion for summary judgment at the end of the trial, which the circuit court also denied. The jury ultimately found Roadcap liable on both the malicious prosecution and negligence counts. The jury awarded Armstrong $24,750 in damages on the negligence count and no damages on the malicious prosecution count.

After the trial, both parties separately moved to set aside the jury verdict on various grounds. In his motion, Armstrong asked the circuit court to enter an award of damages against Roadcap on the malicious prosecution count "in accordance with the evidence presented" and in the alternative, to order a new trial. As to the negligence count, Armstrong asked the circuit court to find that the jury's award of damages was "inadequate and require [Roadcap] to pay an amount in excess of the recovery . . . found in the verdict or to award a new trial."

- 4 -

Following a hearing, the circuit court denied the motions to set aside the jury verdict. The circuit court determined that there was sufficient evidence to sustain the verdicts, including the zero-dollar verdict on the malicious prosecution count. The circuit court explained that the "jury was free to make determinations on the credibility of the evidence and witnesses including that of [Armstrong], his former counsel Mr. Green, [Armstrong's] expert, and financial documents entered as exhibits." The circuit court found that Roadcap "adroitly" cross-examined Armstrong's expert witness and "poked significant holes in [Armstrong's] assertion of damages." The circuit court also noted that the jury may not have found the expert's testimony credible, as the testimony "greatly relied on information provided to [the expert] by" Armstrong. As for the attorney billing issue, the circuit court observed that "[t]here was no formal invoice" and that Armstrong only submitted a receipt from Green "that appear[ed] to have been produced for trial purposes." The circuit court also noted that Green's fee was "extremely large" and involved an "unusual partial payment" of Armstrong buying a car for Green "by wire transfer directly to the dealer."

In addition, the circuit court explained that Armstrong drafted and was the proponent of the verdict form, which instructed the jury that it "must fill in the blanks below with either a dollar amount or the word 'none.'" The circuit court observed that Armstrong "asked that the form include the possibility of 'none' in determining damages." As a result, Armstrong "made this verdict form the law of the case, and he was the proponent of the possibility of a $0.00 verdict."

ANALYSIS

I. Motion to Set Aside the Jury Verdict

For his second, third, fourth, and fifth assignments of error, Armstrong asserts that the circuit court erred in denying his motion to set aside the jury verdict on the damages issue. Armstrong argues that "[n]othing in the trial record supports an award of zero damages on the malicious prosecution count and/or only $24,750.00 on the negligence count." Armstrong

- 5 -

argues that "Roadcap did not effectively challenge any of the damages in this case nor did she present expert testimony of her own nor any witnesses that rebutted damages." Armstrong points to Hitchcock's lengthy testimony that Armstrong's business lost profits amounting to about $609,000 "during the time period from his arrest on the false charges to the dismissal of those charges." Armstrong also points out that he submitted evidence of "direct out of pocket expenses," including his attorney fees and bond payment.

It is well-settled that "a party who comes before us with a jury verdict approved by the circuit court 'occupies the most favored position known to the law.'" *Northern Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992)). This Court "will not set aside a trial court's judgment sustaining a jury verdict unless it is plainly wrong or without evidence to support it." *Sroufe v. Waldron*, 297 Va. 396, 397 (2019) (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)).

Here, Armstrong had the burden to prove the damages resulting from Roadcap's negligence and malicious prosecution. *See Shumate v. Mitchell*, 296 Va. 532, 550 (2018). The circuit court found that the evidence was sufficient to support the jury's verdict because Roadcap "poked significant holes" in Hitchcock's testimony and presented the jury with alternative reasons as to why Armstrong's profits might have declined, including the stress of a marital separation, the pending arrival of a new child, and the declining health of a family member. Moreover, as the circuit court noted, Hitchcock's conclusions greatly relied on information Armstrong provided to him for trial. The jury was free to weigh the credibility of Hitchcock's testimony on damages, as "the jury are the sole judges of the weight and credibility of the evidence and have the right to discard or accept the testimony, or any part thereof, of any witness when considered in connection with the whole evidence before them." *Gilliam*, 293 Va. at 24 (quoting *Smith v. Wright*, 207 Va. 482, 486 (1966)).

As to Armstrong's claim for reimbursement of Green's attorney fees, the circuit court explained that "the jury did not have to believe the veracity of Mr. Green, his billing in the case, or [Armstrong]." Armstrong offered no formal invoice, but rather a general receipt of the date of payments, and did not itemize the specific legal services Green performed. Rather, the receipt generally stated that Green provided "services in regards to abduction, domestic assault and battery and larceny, and preventing all charges." The receipt also stated that Green "received a 2009 Lexus LS 460 as part of payment." As the circuit court noted, the partial payment of fees through the purchase of a vehicle was "unusual." Thus, the circuit court correctly concluded that "[t]he jury was free to determine that no credible evidence was presented for which they could find a dollar figure." Accordingly, we hold that the circuit court did not err in denying Armstrong's motion to set aside the jury verdict.

## II. Summary Judgment

For his first assignment of error, Armstrong argues that the circuit court erred in denying his motions for summary judgment because "there was no question of material fact in dispute regarding Roadcap's liability for malicious prosecution and negligence." Although the jury ultimately found Roadcap liable on both the malicious prosecution and negligence counts, Armstrong argues that the circuit court's denial of his motions for summary judgment was not harmless error because "[t]he deliberative process of a jury is unknowable and undoubtedly would have been impacted had the trial court granted summary judgment and only instructed them on damages."

We will assume, arguendo, that the circuit court erred in denying Armstrong's motions for summary judgment. We will also assume, arguendo, that had the circuit court granted summary judgment, that decision would have influenced the jury to award Armstrong a greater amount of damages. Armstrong's argument nevertheless still fails because it incorrectly assumes that a trial court's grant of summary judgment on liability is a legitimate factor that the jury may consider in

determining the amount of damages to award a plaintiff. Had the circuit court's imprimatur on liability influenced the jury to award Armstrong a greater amount of damages, such influence would have been entirely improper. An appellant cannot claim that an alleged error is not harmless by arguing that, had the error not been committed, the jury would have been influenced by an improper factor that had no relevance to the jury's decision in the first place. The jury's decision on damages had to be based solely on the evidence presented to it, and that alone. And, as explained in Section I, *supra*, the jury's decision on damages was warranted by the evidence presented in this case. Therefore, even if the circuit court erred in denying Armstrong's motions for summary judgment, we hold that such error was harmless. *See* Code § 8.01-678 ("When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any error committed on the trial.").

## CONCLUSION

For these reasons, the judgment of the circuit court is affirmed.

*Affirmed*.